## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

JASON BURTON, individually and
On behalf of all others similarly situated

Plaintiff,

V.                                                Case No: _____

THE SCION GROUP LLC,

Defendant.
_____.

## FLSA SECTION 216B COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, JASON BURTON, individually, and on behalf of all others similarly situated, who consent to their inclusion in this collective action, brings this lawsuit pursuant to §216(b) of the Fair Labor Standards Act ("FLSA"), against Defendant, THE SCION GROUP LLC for violations of the Fair Labor Standards Act, 29 U.S.C. §201 *et. seq.* for failure to pay overtime compensation and for willfully misclassifying him and all Maintenance Supervisors as exempt from overtime pay.

## INTRODUCTION

1.      The Fair Labor Standards Act is our nation's foremost wage law.  The overtime requirements of the FLSA were designed to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for

health, efficiency, and general well-being of workers..." 29 U.S.C. § 202(a). To achieve its goals, the FLSA sets minimum wage and overtime pay requirements for covered employees. 29 U.S.C. §§ 206(a) and 207(a). It requires minimum wage and overtime pay for certain non-exempt employees. 29 U.S.C. §213.

2.      Plaintiff, Jason Burton ("Burton" or "Plaintiff") worked for The Scion Group LLC ("Scion" or "Defendant") from approximately February, 2020 until June 2021 as a Maintenance Supervisor, also known as a facilities Manager.

3.      Plaintiff, and the putative class ("Class") of similarly situated employees were not compensated for all hours worked over 40 in each and every work week and were unlawfully and intentionally misclassified as salaried exempt employees.

4.      Defendant has maintained a scheme to avoid its obligations to pay overtime wages to its maintenance supervisors in order to save many millions of dollars in labor costs and to maximize profits, all to the detriment of its hard working, laborious employees.

5.      Defendant's employment records, and anticipated testimony from other witnesses and other party Plaintiffs who may opt in and join this action will demonstrably show that Plaintiff, and the putative class of similarly situated employees should have been and should be now, classified as non-exempt employees such that Defendant cannot now and should not be able to claim any

exemption to overtime pay, and that Defendant knew that its failure to pay overtime wages to Plaintiff and all other Maintenance Supervisors was a willful violation of the FLSA.

6.      Plaintiff, and the putative class of similarly situated employees, worked at upwards of 127 communities throughout 34 states, ultimately overseen and reporting to the Defendant at its corporate office located in Chicago Illinois, and under the direction and control of the CEO, Rob Bronstein.

7.      Plaintiff, and the putative class of similarly situated employees in the past three (3) years preceding the filing of this complaint, and still to this day, were systematically denied any overtime pay for all hours they worked in excess of forty (40) in each and every workweek on behalf of Defendant.

8.      Defendant maintained a common unlawful pay practice applicable to all Maintenance Supervisors as a group or class, classifying them all as exempt from overtime without regard to any individualized job analysis.

9.      Accordingly, Plaintiff, individually, and on behalf of the class of similarly situated employees who consent to their inclusion in this collective action sue Defendant for violations of the Fair Labor Standards Act for: failing to pay the Plaintiff and others similarly situated non-exempt employees overtime compensation because they did not and currently do not perform work that meets the

definition of any exemption under the FLSA, and the Defendant's pay practices are not only unfair, but blatantly unlawful under the FLSA.

10.     The allegations in this pleading are made without any admission that, as to any particular allegation, Plaintiff bears the burden of pleading, proof, or persuasion.  Plaintiff reserves all rights to plead in the alternative.

## FLSA CLASS DEFINITION AND RELIEF SOUGHT

11.     This collective action is commenced to recover from Defendant, overtime compensation, liquidated damages, prejudgment interest, reasonable attorney's fees and costs and expenses of litigation under 29 U.S.C. §216(b) on behalf of the Plaintiff and all similarly situated persons composed of:

> All persons employed by The Scion Group LLC working anywhere in the United States and its territories under the title of Maintenance Supervisor, Facilities Manager, or any other job titles previously or currently used to describe persons performing the same work, any time within the three (3) years preceding this lawsuit to the day of trial.

## JURISDICTION AND VENUE

1.     This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331, since this action involves a federal question under the Fair Labor Standards Act, 29 U.S.C. §§201-219, inclusive.

2.     This Court has personal and general jurisdiction over this action because the Defendant's Corporate office is in Chicago, Illinois and from where the alleged unlawful pay practices were created and instituted.

3.     Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. §1391(b) since the unlawful pay practices complained of were created and instituted from Defendant's corporate office, located in Chicago, Illinois.

4.     Upon information and belief, Defendant The Scion Group LLC has revenues of $500,000.00 or more in the previous three (3) years and employed 1750 or more employees during the same period of time.

5.     Plaintiff was engaged in interstate commerce, ordering and obtaining products and materials from across state lines, and then installing such products and materials.

6.     At all relevant times, Defendant has been, and continues to be, an employer engaged in interstate commerce and/or the production of goods for commerce, within the meaning of FLSA 29 U.S.C. §§206(a) and 207(a).

## **THE PARTIES**

7.     At all times relevant to this action, named and representative Plaintiff Jason Burton resided in Alabama, and worked for Defendant as a Maintenance Supervisor at Defendant's residence hall or off campus student housing community located at the University of Alabama in Birmingham, Alabama.

8.     Defendant, The Scion Group LLC, is an Illinois, for profit corporation with a principal place of business in Chicago, Illinois located at 444 N. Michigan Ave Suite 2600 Chicago, Illinois 60611. Defendant may be served through its designated registered agent, shareholder and CEO, Rob Bronstein, at the same address.

9.     Defendant The Scion Group LLC, also created, instituted and maintained the unlawful pay practices and schemes complained of herein, and was in charge of the day-to-day management of the company throughout the preceding 3 years to the present.

10.     As per Defendant's website, thesciongroup.com, Defendant operates at least in 127 Communities across 34 states including offices throughout the State of Illinois, in addition to new offices in Irvine, California and Washington D.C., within the relevant three-year class period.   Scion employs over 1,750 team members and has approximately $9 billion of assets under management. Scion also acts as an independent advisor to colleges and universities, foundations, and private-sector providers, with experience in more than 250 campus markets.

11.     Defendant also is "the largest owner/operator of off-campus student housing communities globally".

12.     Defendant, upon information and belief, employed upwards of 300 or more laborers, working under the titles of Maintenance Supervisors at any given time. during the preceding 3 years to the present.

13.     The Scion Group LLC is an "employer" as defined by 29 USC section 203d.

## GENERAL FACTUAL ALLEGATIONS

14.      Plaintiff Burton is required to work a minimum work schedule of 40 work hours during the week, Monday to Friday, from 8:00 am until 5:00 pm, and be at the building during these work hours.

15.     Defendant post jobs for positions as a Maintenance Supervisor or Facilities Manager position with identical job descriptions regardless of the geographic location, demonstrating that Scion Maintenance Supervisors have the same job requirements on a national scale applicable to all maintenance supervisors throughout all of its 127 communities located in 34 states.

16.     Throughout Plaintiff's employment as a Maintenance Supervisor, he routinely was required to work in excess of 40 hours per week without being paid any additional pay and not any premiums pay for said hours, with the exception of a $100 stipend for the weeks in which he was on call.

17.    In order to complete the work and the jobs assigned to him by Scion and his managers, Burton routinely had to work more than 8 hours in a day and more than 40 hours in a week.

18.    Burton was required to be on call in a rotation with the other maintenance technician such he was on call 24 hours per day, for the full 7 days in the calendar week at least 2 or more weeks per month and expected to handle all after hours maintenance needs and emergencies, and which often required him to drive to the building and fix or repair something at any given time.

19.    Defendant placed a production requirement on the maintenance supervisors such that if they did not work extra hours to finish and complete jobs, work orders, or tasks assigned, they will fall short on production requirements and risk termination of their employment.

20.    Plaintiff was misled by management to believe that he was not entitled to be paid overtime premiums, and that he was properly classified as exempt from overtime pay regardless of his actual work history and responsibilities.

21.    Defendant also knew that Plaintiff was routinely required to work more than 40 hours per week to complete all his job duties and responsibilities, and when on call for the week substantially more than 40 hours.

22.     Plaintiff was not required to clock in and out for his work hours or meal breaks, and the if he took less than the available allotted break time, was not paid for this time as well.

23.     Plaintiff was permitted to work as many overtime hours as he deemed necessary during the week, and even on weekends, to keep up with the work requirements, and Defendant has never restricted or limited Plaintiff's work hours, access to the building or disciplined Plaintiff for working extra hours.

24.     Defendant was fully aware and knew that Plaintiff was working more than 40 hours each week.

25.     Further, during the move in period in August, referred to as "the turn" Plaintiff had to work 14 days in a row without a day off, and averaging 10 to 12 hours per day.

26.     Plaintiff was told by Defendant he had to work as many hours as necessary to complete the work orders, jobs, and tasks assigned, and he could not generally just come and go as he pleased or work less for instance 35 hours in the week if he was tired, or felt he was keeping up with the work.

27.     Plaintiff was paid a salary and was told he was not going to be paid any additional pay for hours beyond 40 in any workweek.

28.     Plaintiff did not perform performance evaluations or annual job reviews of any subordinate employees, including the maintenance technicians.

29.     Plaintiff did not handle employee scheduling.

30.     While not out and about fixing, repairing and assessing maintenance matters, he had a fenced in area in the parking garage to work from which also stored tools and materials and which was referred to as the shop; Plaintiff did not have an office like other managers on the property.

31.     Plaintiff did not have the discretion and judgment to formally and in writing discipline any employees, nor make the decision to terminate or fire any employee.

32.     Plaintiff did not have any role in setting the wages of other employees, determining raises or making any decision as to the rates of pay for any employees.

33.     Plaintiff Burton did not select candidates for interviewing, nor did he make the decision on the hiring of any other employees.

34.     On approximately 1 very rare occasion, Plaintiff sat in on a job interview being conducted by managers, and later the decision on whether to hire the person being interviewed was solely within the discretion of the managers involved.

35.     At most, and primarily, Plaintiff Burton was a working supervisor over just 1 other person, a maintenance technician, who never scrutinized nor measured and assessed the work performance of the maintenance technicians.

36.     For purposes of the collective action, the Plaintiff by this Complaint, gives his written consent to be a party to this action pursuant to 29 U.S.C. §216(b).

37.     At all times relevant to this action, Defendant was an employer of Plaintiff of this proposed FLSA collective action within the meaning of 29 U.S.C. §203(g).

38.     Defendant maintained a policy and practice during the preceding three (3) years of misclassifying Plaintiff and all other similarly situate Maintenance Supervisors as exempt from overtime pay under the FLSA and any applicable state laws.

39.     Defendant, by and through its managers, knew that the work orders and job responsibilities to be completed by Plaintiff and all other Maintenance Supervisors regularly required them to work more than 40 hours in the work week, and clearly more than the 8 hours per day.

40.     Defendant acquiesced, accepted, permitted, and encouraged Plaintiff and all others similarly situated Maintenance Supervisors to work additional hours beyond the standard corporate schedule of Monday to Friday, 8:00 am to 5:00 pm, with up to a 1-hour meal break, and without being paid any or all premium for all hours worked over 40 in each respective work week.

41.    Defendant has willfully violated, and continues to violate, §207 of the FLSA by failing to pay Plaintiff and others Maintenance Supervisors overtime compensation for all hours worked in excess of forty (40) per week.

42.    Upon information and belief, for the three (3) year period before this filing, (the "Class Period"), the continued violations of FLSA §207 that are complained of herein have been practiced and imposed upon all Maintenance Supervisors.

43.    The FLSA provides that, with certain exceptions, employers must pay employees overtime of at least one and one-half (1.5) times their regular rate of pay for any hours over forty (40) worked in a week. 29 U.S.C. §207(a)(1).  Although the FLSA provides for certain exemptions to the mandates of paying overtime compensation, no exemption applies in the instant matter, and Defendant has treated Plaintiff and all other similarly situated employees as either exempt employees during this relevant class period to the present, or just has willfully violated the FLSA by not paying premiums for overtime hours worked.

## COLLECTIVE ACTION ALLEGATIONS

44.    Plaintiff brings this action individually and on behalf of all present and former Maintenance Supervisors as a group or collective members pursuant to the Fair Labor Standards Act.  29 USC §216(b).

45. In Young v. Cooper Cameron Corp., the court stated that: "The requirements of Fed. R. Civ. P. 23 do not apply to the approval of a collective action and thus no showing of numerosity, typicality, commonality and representativeness need be made." Young v. Cooper Cameron Corp., 229 F.R.D. 50, 54 (S.D.N.Y. 2005).

46. Still, despite the *Young* court's ruling, the members of the Class are so numerous that joinder of all members is impracticable and in the interests of justice, as well as in keeping with the legislature's intent in creating Collective Actions under Section 216(b), proceeding as a collective action is proper in this case. While the exact number of the members of the Class is unknown to the Plaintiff at this time and can only be ascertained through appropriate discovery, upon information and belief, Plaintiff believes that there are 1000 or more individuals in the defined class within the three (3) year relevant class period.

47. Plaintiff will fairly and adequately protect the interests of the Class of similarly situated workers and has retained counsel that is experienced and competent in class/collective actions and employment litigation. Plaintiff has no interest that is contrary to, or in conflict with, members of the Class.

48. A collective action suit, such as the instant one, is superior to other available means for a fair and efficient adjudication of this lawsuit. The damages suffered by individual members of the Class may be relatively small when compared

to the expense and burden of litigation, making it virtually impossible for members of the Class to individually seek redress for the wrongs done to them.

49.     A collective action is, therefore, superior to other available methods for the fair and efficient adjudication of the controversy.  Absent these actions, the members of the Class likely will not obtain redress for their injuries and Defendant will retain the proceeds from its violations of the FLSA.

50.     Furthermore, even if any member of the Class could afford individual litigation against the Defendant, it would be unduly burdensome to the judicial system.  The instant methodology, when compared to voluminous individual actions, has fewer management difficulties and provides the benefits of unitary adjudication, economies of scale, and comprehensive supervision by a single court.  Concentrating this litigation in one forum will promote judicial economy and parity among the claims of individual members of the Class and provide judicial consistency.

51.     There is a well-defined community of interest in the questions of law and fact affecting the Class as a whole.  The question of law and fact common to each member of the Class predominates over any question affecting solely individual members of the action.  Among common questions of law and fact are:

      a.     Whether Defendant employed members of the Class within the meaning of the applicable provisions of the FLSA;

b.  Whether Plaintiff and members of the Class were expected, permitted, and encouraged to regularly work hours in excess of forty (40) per week without being paid a premium for all hours worked;

c.  Whether Defendant can prove that Plaintiff and the maintenance supervisor position meet the elements of any pled exemption under the FLSA;

d.  Whether Defendant knowingly failed to maintain and preserve accurate and true records of all hours worked and wages earned by Plaintiff and the Class;

e.  Whether Plaintiff and the Class have sustained damages, and if so, what is the proper measure of such damages;

f.  Whether Defendant willfully and with reckless disregard, misclassified Plaintiff and the class of similarly situated as exempt from overtime pay as set forth in Section 207 of the FLSA;

g.  Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its continued maintenance as a collective action.

52.    Plaintiff and other similarly situated members of the Putative Class, were titled as Maintenance Supervisors or Facilities Managers, the later name of which may be the succor job title.  Burton and all other Maintenance Supervisors were not given any real authority discretion to use their independent judgment and discretion to make any decisions which would bind the company, or the authority to signing contracts, or which could be used to create policies or procedures for the employees, for the building nor for the company.

53.    The Defendant will likely argue to no avail that the Plaintiff and members of the Putative Class of Maintenance Supervisors are exempt under the administrative or executive, exemptions.

54.    However, under the FLSA, an executive employee is defined as an employee "who has the authority to hire or fire other employees or whose suggestion and recommendations as to the hiring, firing, advancement, promotion, or any other change of status of other employees are given particular weight."  29 C.F.R. §541.100(a); and an executive exempt employee must direct the work of 2 or more full time employees or the equivalent.

55.    Plaintiff, and similarly situated Maintenance Supervisors do not qualify for the executive exemption because they did not have the authority to hire or fire other employees, nor discipline them, and did not generally direct the work and supervise two or more full-time employees.

56.     Thus, Burton and all other Maintenance Supervisors fail the short test as they did not supervise two or more full-time employees or the equivalent.

57.     Under the FLSA, an administrative employee is defined as an employee who has "discretion and independent judgment with respect to matters of significance." 29 C.F.R. §541.200.  In order to possess such discretion, the employee must have the authority to make "independent choice[s], free from immediate direction or supervision…even if their decisions or recommendations are reviewed at a higher level."  29 C.F.R. §541.202(c).

58.     Plaintiff and similarly situated Maintenance Supervisors do not qualify for the administrative exemption because they were not allowed to hire, fire, train, mentor, or discipline any employees, and their primary job duty did not involve the exercise and discretion of independent judgment in matters of significance, and alternatively they were involved in manual work generally deemed to be nonexempt repair and maintenance duties and primarily similar to the hourly paid maintenance technicians.

59.     Moreover, Burton's role in any interviewing was so rare and infrequent as to be an anomaly and not part of his primary duties.

60.     The Primary job duty of the Maintenance Supervisor position manual work, including the repair and maintenance, well-accepted recognized non-exempt

job duties under the FLSA and DOL regulations, and as to which Burton spent 85% of his regular work hours performing.

61.     Further, Maintenance Supervisors are not "managers" within the meanings and factors of the FLSA and related CFR regulations, as they did not direct the work of and manage other employees, departments, or any divisions.

62.     When not out and about repairing and doing manual labor or inspecting and assessing damages, Plaintiff Burton's "office" and work location was a fenced in shop area in the parking garage from which he was not sitting in and directing and supervising the work of the other maintenance employees or any other employees.

63.     Burton and all other Maintenance Supervisors do not have the discretion to create company policies, building policies, nor the discretion or independent judgment in making decisions on changing any company policies and procedures.

64.     Unless proven to be exempt from the protection of overtime laws, all employees are entitled to premium overtime pay for work in excess of forty (40) hours per week.

65.     Plaintiff and members of the Class were, and continue to be, required to work more than forty (40) hours a week during their employment with Defendant, and were all classified as salaried, exempt employees and thus not paid the required overtime premiums for all the overtime hours worked.

66. Plaintiff herein alleges individually and on behalf of the members of the Class of similarly situated, that Defendant' failure to pay overtime compensation was and is a knowing and willful violation of the overtime wage requirements of the

## CLAIM FOR VIOLATION OF § 207 OF THE FLSA AND FAILURE TO PAY OVERTIME WAGES

67. Plaintiff adopts and re-alleges the foregoing paragraphs as if fully asserted herein.

68. At all relevant times, Defendant employed Burton and each member of the Class, and continues to employ members of the Class within the meaning of the FLSA.

69. Upon information and belief, all Maintenance Supervisors and Facilities Managers were paid under a common and similar compensation plan of a base salary, and all were classified and treated as exempt from overtime premiums as a class without regard to any individualized analysis or job analysis.

70. Defendant maintained a national policy and practice of classifying all maintenance supervisors and facilities managers as exempt from overtime pay regardless of any individualized analysis.

71. Plaintiff actually performed job duties and responsibilities during the term of his employment which do not meet the definition of, nor satisfy the elements of any recognized and codified exemption under the FLSA.

72.     Defendant has willfully misled Plaintiff and all other Maintenance Supervisors to believe the company was complying with FLSA by treating them as exempt from overtime pay regardless of whether they had less than 2 maintenance technicians working with them; Plaintiff accepted that he was exempt, and thus performed all the overtime hours without dispute or question about not being paid premiums for the laborious work.

73.     Defendant's management is well aware of maintenance supervisors working more than 8 hours in a day, more than 40 hours in a week, and well beyond the minimum 40-hour work schedule of Monday to Friday, especially during the turns and during the on call workweeks.

74.     Plaintiff Burton and the Putative Class are not lawfully exempt under the FLSA because they were given the tile of "supervisor", as the FLSA holds that "[a] job title alone is insufficient to establish the exempt status of any particular employee … [but rather] [t]he exempt or nonexempt status of any particular employee must be determined on the basis of whether the employee's salary and duties meet the requirements of the regulations in this part."  29 C.F.R. § 541.2

75.     As a result of Defendant's unlawful pay practices complained of herein, specifically misclassifying Plaintiff and all other Maintenance Supervisor employees as exempt from overtime pay throughout the three (3) year class period to the present, Defendant has willfully stolen many millions of dollars or more in

wages earned by employees who should have been classified as non-exempt workers.

76. Defendant knowingly and willfully failed to pay Plaintiff and all other members of the Class, overtime compensation at the appropriate legal rate for all hours they performed work on behalf of Defendant above and beyond forty (40) hours per workweek in violation of the FLSA, in particular 29 U.S.C. § 207.

77. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. §255(a).

78. Defendant is well aware that in order to meet goals, job completion times and to complete and perform their job duties to the expectations of Defendant, Maintenance Supervisors must routinely work more than forty (40) hours in a workweek.

79. Defendant cannot and does not have a good faith basis under the FLSA for its willful actions and conduct of refusing and failing to pay Plaintiff and all similarly situated Maintenance Supervisors lawful rates for all overtime hours worked over 40 hours in each and every workweek.

80. Plaintiff and the Class thus are entitled to and should be awarded liquidated damages of an equal sum of the overtime wages awarded or recovered for a period of three (3) years preceding the filing of this action to the present and continuing.

81.     Due to Defendant's willful FLSA violations, Plaintiff alleges on behalf of the members of the Class that they have suffered damages and are entitled to recover from Defendant the unpaid overtime compensation due and owing for all hours worked in excess of forty (40) in each and every workweek, plus an additional equal amount as liquidated damages, prejudgment interest, reasonable attorneys' fees, costs and disbursements of this action, pursuant to 29 U.S.C. §216(b).

82.     Plaintiff Burton and the class of similarly situated have suffered financial harm and loss of monies owed to them as a direct and proximate result of Defendant's unlawful pay practices complained of herein.

**WHEREFORE** Plaintiff, Jason Burton, individually and behalf of all others similarly situated prays for:

a.     An order designating this action as a collective action and issuance of notice pursuant to 29 U.S.C. §216(b) to all similarly situated individuals across the nation with instructions to permit them to timely assert FLSA claims in this action by filing individual Consents to Join this action as plaintiffs pursuant to §216(b); and that notice be sent to all past and present employees of THE SCION GROUP LLC. any time during the three (3) year period immediately preceding the filing of this suit, through and including the date of this Court's issuance of the Court Supervised Notice;

b.  An order awarding attorneys' fees and costs pursuant to §216 of the FLSA;

c.  That the Court finds Defendant has violated Section 207a of the FLSA and that the Court finds that Defendant's violations of the FLSA were, and are willful;

d.  That the Court award Plaintiff Burton and the Putative Class of all similarly situated employees overtime compensation for all the previous hours worked over forty (40) hours in each and every workweek at correct and lawful rate of pay during the past three (3) years, AND an equal sum in liquidated damages. In addition, interest on said award pursuant to §216 of the FLSA;

e.  That the Court appoint Mitchell Feldman, Esq. and the firm of Feldman Legal Group as class counsel in the FLSA collective action, and appoint Jason Burton as class representative for all those similarly situated with the authority to negotiate on behalf of all opt in plaintiffs, and award Burton a service award fee for his time and service to all others similarly situate in this action; and

f.  That the Court award any other legal and equitable relief as this Court may deem appropriate, fair and just.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by this Complaint and on all other issues so triable.

Filed March 2, 2023.

Respectfully submitted,

*/s/Mitchell Feldman, Esq.*
Mitchell L. Feldman, Esquire
Florida Bar No.: 0080349
FELDMAN LEGAL GROUP
6916 W. Linebaugh Ave, #101
Tampa, Florida 33625
Tel: 813-639-9366
Fax: 813-639-9376
Mfeldman@flandgatrialattorneys.com
*Attorney for Plaintiff and all others*
*similarly situated, AND LEAD*
*COUNSEL*