### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS

JASON BURTON,

      Plaintiff,

 v.

                                       Case No: 1:23-cv-01315

THE SCION GROUP LLC,

      Defendant.

_____.

### PLAINTIFF'S UNOPPOSED MOTION FOR APPROVAL OF FLSA SETTLEMENT AND DISMISSAL

Plaintiff, Jason Burton ("Plaintiff"), submits this Unopposed Motion for Approval of the FLSA Settlement and Entry of Dismissal (the "Stipulated Motion") and states as follows:

### INTRODUCTION

Plaintiff and Defendant, THE SCION GROUP LLC ("Scion" or "Defendant") have entered into a "Settlement Agreement" to resolve the Fair Labor Standards Act claims (the "FLSA" 29 U.S.C. 216(b)) arising from this action [Exhibit 1 - the FLSA Settlement Agreement]. Pursuant to this Court's Order [D.E. 22], Plaintiff files this Unopposed Motion with the Court for approval of the Settlement Agreement and to dismiss this case. The Settlement Agreement is fair and reasonable, as it fully and adequately satisfies this Court's criteria for settlements of bona fide wage disputes under the FLSA.

It is generally accepted that court approval of the settlement of an FLSA action settlements is necessary to effectuate a valid and enforceable release of the FLSA claims asserted by plaintiffs. *See* Walton v. United Consumer Club, Inc., 786 F.2d 303, 306 (7th Cir. 1986) (*citing* Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350 (11th Cir. 1982)). If the settlement reflects a reasonable

compromise over issues that are actually in dispute, the Court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." Lynn's, 679 F.2d at 1354.

## FACTUAL BACKGROUND

1.     Plaintiff maintains that he was a Maintenance Supervisor working for Scion at various off-campus student housing communities across the country.

2.     Maintenance Supervisors were all paid on a salary basis and were not eligible for overtime compensation.

3.     Plaintiff filed the instant action March 2, 2023, alleging that Scion violated the FLSA by misclassifying him as exempt from overtime compensation and by allegedly failing to pay him overtime premiums. [DE 1]. While filed as a collective action, no opt-in plaintiff joined this case.

4.     Scion denied that it misclassified Plaintiff and avers that it acted in good faith compliance with the FLSA. Moreover, Scion contends that Plaintiff inflated the quantum of hours allegedly worked and denies that Plaintiff is owed overtime compensation. [DE 17]

5.     During discovery, the Parties discussed settlement resolution, and on August 23, 2023, the Parties notified the Court that they reached a stipulated settlement of Plaintiff's claims. [DE 21].

6.     Despite the Parties' arguments and differences, the Parties have reached a compromise to resolve the Plaintiff's claims, including the attorney's fees and costs incurred. The Parties agree it is desirable that this matter be fully and finally resolved in the manner and upon the terms set forth in the FLSA Settlement Agreement [Exhibit 1].

7.     Plaintiff and his experienced FLSA wage and hour attorneys have determined that the settlement set forth in the FLSA Settlement Agreement is in his best interests. Plaintiff

recognizes and acknowledges the time and expense of continued litigation necessary to prosecute this case through summary judgment, trial, and possible appeal. Moreover, continued litigation is inherently uncertain and risky, including the risk of a recovery of $0.00 and the possibility that Plaintiff would be responsible for Defendant's taxable costs. Additionally, continued litigation could result in protracted motion practice, which would ultimately delay a determination on the merits of Plaintiff's overtime wage claims.

8.      Given that discovery has just begun, the case would continue for, at a minimum, one year, and if the Court were to grant conditional certification, the scope of the discovery and factual disputes would expand, and trial would likely be further delayed. These factual and legal disputes which would require discovery and resolution include:

a.      Whether Plaintiff was properly classified as exempt from overtime compensation under the FLSA;

b.      If so, whether Plaintiff performed work in excess of forty (40) hours during each applicable workweek;

c.      Whether a two or three-year statute of limitations should apply; and

d.      Whether Plaintiff should be awarded liquidated damages under the relevant legal standard.

9.      Notwithstanding the foregoing, Plaintiff, with assistance of counsel, determined that a compromise was in his best interests.

10.     In reaching this compromise, Plaintiff and Plaintiff's Counsel considered the fact that should they proceed to trial, there is a risk that the trier of fact could conclude that he was properly classified as exempt from overtime compensation and eliminate his wage claims entirely, and Plaintiff would not only have a $0 recovery, but he would risk having to pay all the taxable

costs of thousands of dollars to Defendant.

11.     Thus, the Parties finalized the negotiated Settlement Agreement, which memorialized, in writing, the essential and material terms of the Parties. All parties and their counsel approve the terms and conditions of the Settlement Agreement. Plaintiff has executed the written settlement agreement individually. The FLSA Settlement Agreement is executed in counterparts is attached as Exhibit 1.

12.     Pursuant to the terms of the Settlement Agreement, Defendant Scion has agreed to pay Plaintiff the aggregate total sum of $1,700.00; $850.00 in allegedly unpaid wages, plus an equal amount for which Defendant will issue an IRS Form 1099 for this payment.

13.     This represents a combined payment for all amounts alleged by Plaintiff to be owed. The settlement represents a fair and reasonable compromise between the Parties, which Plaintiff has accepted.

14.     Ultimately, Mr. Burton fully understood that he was claiming higher sums in wages, and accepting a substantial compromise to resolve, but he did not wish to continue with the risks, the time involved, and was willing to accept the best and final offer from Defendant at this juncture. As his counsel, the undersigned likewise cannot force the Plaintiff to continue to fight for more and cannot stand in the way of his acceptance of the sum offered by Defendant to resolve his wage claim.

15.     In addition to resolving the Plaintiffs' underlying claims, the Settlement Agreement resolves Plaintiffs' outstanding claims for attorneys' fees and costs, which are recognized by courts as an integral part of their claim. Pursuant to the terms of the Settlement Agreement, the Parties separately negotiated and agreed that Scion would pay Plaintiff's attorneys' fees and costs, totaling $5,000.00, which includes reimbursement of Plaintiff's costs incurred in this matter.

16.     Plaintiff's attorneys' fees and costs were separately negotiated and agreed upon by the Parties without regard to (and only after reaching an agreement regarding) the amount paid to Plaintiff so as not to affect the wage payments.

17.     For purposes of settlement, Scion agrees that the quantum of attorneys' fees and costs is fair and reasonable and agrees that the Parties negotiated a compromise separately and aside from the sum Scion agreed pay the Plaintiff for the unpaid wage claim.  Courts recognize that a negotiated settlement is fair and reasonable when the amount to be paid by the defendant to settle the plaintiffs' wage claims are not interfered with or affected by the amount or sum the defendant agrees to pay to the plaintiffs' attorneys and is not a percentage or a contingency fee. Bonetti v. Embarq Management Company, 715 F. Supp. 2d 1222 (M.D. Fla. 2009) *See* Exhibit 1 - Settlement Agreement.

18.     Defendant has been represented by highly competent and professional counsel, who have vigorously represented the Defendant.

19.     Accordingly, Plaintiff's Counsel was required to expend significant amounts of time to ultimately reach this resolution. Feldman Legal Group incurred in excess of 40 hours which equates to $16,500 in lodestar fees, plus an additional $567.00 in costs.

20.     Plaintiff's Counsel agreed to accept a steep reduction in incurred lodestar attorneys' fees and costs in order to facilitate Plaintiff's desire to resolve this matter quickly and without incurring the significant time and risk associated with litigating this matter through trial, or resort to a second litigation over attorney's fees.  This is especially true considering the Plaintiff had substantial risk of obtaining a zero-dollar award or worse, incurring the cost of defense.

**WHEREFORE**, for the reasons set forth above and as set forth in the below Memorandum of Law, the Parties respectfully request that the Court enter an order approving the Settlement

Agreement, reserve Jurisdiction for a period of 60 days to enforce the terms of the Settlement

Agreement and dismiss this matter with prejudice.

## **MEMORANDUM OF LAW**

"Before approving an FLSA settlement, a court must find that the settlement 'represents a

fair and equitable resolution of a bona fide dispute' under the FLSA. If a court is satisfied that an

FLSA settlement is the product of contested litigation, approval of the settlement is usually

appropriate." Donaldson v. MBR Cent. Ill. Pizza, LLC, 2019 U.S. Dist. LEXIS 158121(citing

Salcedo v. D'Arcy Buick GMC, Inc., 227 F. Supp. 3d 960, 961 (N.D. Ill. 2016) *and* Koszyk v.

Country Fin. a/k/a CC Servs., Inc., No. 16 Civ 3571, 2016 U.S. Dist. LEXIS 126893, 2016 WL

5109196, at *1 (N.D. Ill. Sept. 16, 2016)).

In the present case, the Settlement Agreement is a fair and equitable resolution of Plaintiff's

FLSA claims. Plaintiff maintains he was employed as salaried Maintenance Supervisors by Scion.

The core bona fide FLSA dispute in this case relates to whether Plaintiff was misclassified as an

exempt employee and/or whether Plaintiff was entitled to overtime compensation for work

allegedly performed in excess of forty (40) hours per week.

The Plaintiff would face significant obstacles and risk an unsuccessful outcome if this case

were to proceed to trial. Plaintiff would face a risk at trial of not prevailing on the wage claims

because he would have to establish that he performed non-exempt job duties such that he was

entitled to overtime compensation. Second, Plaintiff would have had to establish that he in fact

worked more than forty (40) hours a week without adequate overtime compensation.

At trial, Scion would have claimed that (i) Scion properly classified Plaintiff in good faith

compliance with the FLSA as exempt from overtime compensation; (ii) Scion implemented

policies and safeguards to prevent Maintenance Supervisors from performing non-exempt work;

6

and (iii) Scion enacted and enforced policies sufficient to show that it acted in both objective and subjective good faith such that a two-year statute of limitations should apply and that liquidated damages are not appropriate in this instance.

Whether Plaintiff is exempt under one or more exemptions under the FLSA is uncertain and a mixed question of law and fact. Additional questions and legal issues to be resolved by the Court or the Jury include the amount of overtime hours the Plaintiff worked; whether Scion acted in both objective and subjective good faith in their classification such that liquidated damages might be awarded or not, and whether the classification as exempt was a willful violation such that a 3-year SOL should apply. In consideration of the close factual issues raised, and the significant costs of litigation required to build a record sufficient to prove the claims or defenses, the Parties reasonably chose to compromise this bona fide dispute. Plaintiff had continuously sought a compromise of the claims, and when such an opportunity arose, he chose to pursue resolution and reach a reasonable compromise that he determined, upon advice of counsel, was in his interests. Logic dictates compromise instead of forcing Plaintiff to risk going all the way to trial and gamble on prevailing on the liability issue or recovering more in wages than he settled for, while also carrying the risk of having to pay Defendant thousands of dollars in costs and expenses if he did not prevail on the claims while offered a compromise.

Ultimately, the Parties agreed to compromise for the total sum of $1,700.00 to be paid to the Plaintiff despite Defendant's strenuous assertion that Plaintiff was correctly classified as exempt and thus not entitled to any compensation. The sum Defendant agreed to pay represents both a compromise of the amount of unpaid overtime and the desire by both Parties to avoid engaging in costly and protracted discovery. Accordingly, the Settlement Agreement represents a fair and equitable resolution of a bona fide dispute resulting from nearly six months of contested

litigation.

Here, the Plaintiff sought and desired to end the litigation, and was unwilling to continue on to fight for more than the sum offered. As such, the Plaintiff made the decision to accept the Defendant's offer and seeks approval herein as this was his decision and he believes it is fair at this juncture.

Due to the contested nature of this matter, Plaintiff and his Counsel incurred substantial attorneys' fees and costs in this litigation. Again, the Court should agree that the Settlement Agreement is a fair and reasonable compromise of a heavily disputed and contested claim. The Settlement Agreement provides as a material term that Defendant shall pay Plaintiff's Counsel attorneys' fees, to include even the costs in the total amount of $5,000.00, which is far less than Plaintiff's Counsel's actual and reasonable time spent litigating and resolving this matter. The fees and costs Plaintiff's counsel agreed to accept also represent just 29% of the total incurred.

When "the plaintiff's attorneys' fee is agreed upon separately and without regard to the amount paid to the plaintiff, then, unless the settlement does not appear reasonable on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of the fees paid to his attorney, the Court [should] approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel." Bonetti v. Embarq Management Company, 715 F. Supp. 2d 1222 (M.D. Fla. 2009).

In the Settlement Agreement, the Plaintiff's attorney's fees and costs were stipulated and agreed to be paid by the Defendant and were separately negotiated from (and only after agreeing upon) the sums agreed to be paid for the wage claims of the Plaintiff. Moreover, Plaintiff's attorneys incurred substantially higher sums in fees (lodestars) and through separate negotiations with Defendant, the Parties reached a compromise as to the sum of attorneys' fees and costs to be

paid by the Defendant without regard to the amount paid to Plaintiff. Additionally, Scion agrees that "that the portion of the Settlement Amount payable to Plaintiff was negotiated separately from and without regard to the amounts Plaintiff's counsel will receive under this Agreement." *See* Exhibit 1 - Settlement Agreement § 2.

Considering Scion's agreement and the significant reduction of attorneys' fees by Plaintiff's Counsel instead of insisting upon a hearing on the quantum of fees, it is clear that the entire Settlement Agreement is fair and reasonable and should be approved. "The purpose of a fee shifting statute, which is to enable smaller claims to be litigated, would be thwarted if attorneys' fees had to be strictly proportional to the amount recovered." Tuf Racing Prods., Inc. v. Am.Suzuki Motor Corp., 223 F.3d 585, 592 (7th Cir.2000). "Litigation is expensive, and 'it is no surprise that the cost to pursue the contested claim will often exceed the amount in controversy.'" Anderson v. AB Painting & Sandblasting Inc., 578 F.3d 542, 546 (7th Cir.2009); *see* SKF USA Inc. v. Bjerkness, No. 09 Civ 2232, 2011 WL 4501395, at *3 (N.D.Ill.2011) (refusing to reduce a $1.3 million dollar award of attorneys' fees when the damages were only $81,068 because Congress predetermined the claim was worth bringing even though there was great disparity between the amount recovered and the attorneys' fees requested).

## CONCLUSION

For the above stated reasons, Plaintiff requests that the Court approve the Parties' Settlement Agreement and enter an Order dismissing this matter. Counsel for Plaintiff has conferred with Scion, who does not oppose, and consents to the relief requested herein.

Dated September 13, 2023.

/s/ Mitchell Feldman
Mitchell L. Feldman, Esquire
FELDMAN LEGAL GROUP

Florida Bar No.: 0080349
6916 W. Linebaugh Ave, #101
Tampa, Florida 33625
Tel: 813-639-9366
Fax: 813-639-9376
Mfeldman@flandgatrialattorneys.com

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I electronically filed the foregoing, with the Clerk of Court by

using the CM/ECF system on this date. Parties may also obtain a copy directly from the

CM/ECF system.

/s/ Mitchell L. Feldman, Esquire

Mitchell L. Feldman

10